IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAM KRIKORIAN,      ) | |
|     Plaintiff,      ) | |
| ) | |
| v.      ) | CIVIL ACTION NO. 1:19-00582-KD-N |
| ) | |
| FORD MOTOR COMPANY,      ) | |
|     Defendant.      ) | |

**REPORT AND RECOMMENDATION**

    This action is before the Court on the motion to remand under 28 U.S.C. § 1447(c) (Doc. 10) filed by the Plaintiff, Sam Krikorian.  The assigned District Judge has referred the motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a).  *See* S.D. Ala. GenLR 72(b); (9/5/2019 electronic reference).  In accordance with the Court's briefing schedule (*see* Doc. 11), the Defendant, Ford Motor Company ("Ford"), timely filed a response (Doc. 12) in opposition to the motion, and Krikorian timely filed a reply (Doc. 13) to the response.  The motion is now under submission (*see* Doc. 11).

    Upon consideration, the undersigned will, pursuant to § 636(b)(1)(B)-(C) and Rule 72(b)(1), recommend that the Court deny Krikorian's motion to remand (Doc. 10) for the reasons explained herein.

                **I.**     *Procedural Background*

    Krikorian commenced this case on July 26, 2019, by filing a five-count complaint in the Circuit Court of Baldwin County, Alabama (*see* Doc. 1 at 14 – 74), alleging causes of action against Ford for fraud (Count One), fraud in the inducement (Count Two), breaches of express warranty (Count Three) and implied

warranty (Count Four), and violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count Five), arising from his purchase of an allegedly defective automobile manufactured by Ford. Ford removed Krikorian's case to this Court under 28 U.S.C. § 1441(a) on August 27, 2019. *See* (Doc. 1).

## II.   *Analysis*

Where, as here, a case is removed from state court, "[t]he burden of establishing subject matter jurisdiction falls on the party invoking removal." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411–12 (11th Cir. 1999). *Accord, e.g.*, *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). Ford alleges diversity of citizenship under 28 U.S.C. § 1332(a) as the sole basis for this Court's original jurisdiction. *See* 28 U.S.C. § 1446(a) ("A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal…containing a short and plain statement of the grounds for removal…").[1]

"Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Thus, a " 'party removing a case to federal court based on

---

[1] Ford does not allege that jurisdiction can also be based on the Magnuson-Moss Warranty Act. Regardless, the Act contains a $50,000 amount in controversy jurisdictional provision, 15 U.S.C. § 2310(d)(3)(B), that Ford is unlikely to satisfy, as Krikorian only paid approximately $27,714.60 for the vehicle at issue, and neither attorneys' fees nor "damages flowing from any pendent state law claim" can be used to calculate that amount in controversy. *See Ansari v. Bella Auto. Grp., Inc.*, 145 F.3d 1270, 1272 (11th Cir. 1998) (per curiam). Punitive damages are also not available for a Magnuson-Moss claim brought in Alabama. *See infra*, n. 10.

diversity of citizenship bears the burden of establishing the citizenship of the parties.' " *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017) (quoting *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam)). *See also, e.g.*, *Ray v. Bird & Son & Asset Realization Co., Inc.*, 519 F.2d 1081, 1082 (5th Cir. 1975) ("The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction . . ." (citing *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974)).[2]  Diversity jurisdiction also requires that "the matter in controversy exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 & n.4 (11th Cir. 2010). Ford has sufficiently alleged, and Krikorian does not dispute, that the parties are diverse.[3]  However, Krikorian does assert that Ford cannot sufficiently prove that the requisite minimum amount in controversy is satisfied.

---

[2] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

[3] Ford's notice of removal alleges that Krikorian, a natural person, is a citizen of, Alabama, *see* (Doc. 1 at 5); *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) ("Citizenship, not residence, is the key fact that must be alleged . . . to establish diversity for a natural person."), and that Ford, a corporation, is a citizen of Delaware, the state under whose laws it was incorporated, and Michigan, the state where it has its principal place of business. *See* (Doc. 1 at 5); 28 U.S.C. § 1332(c)(1). While Krikorian also sues fictitious defendants, their citizenships are disregarded in determining whether removal under § 1332(a) is proper. *See* 28 U.S.C. § 1441(b)(1). Krikorian "does not dispute the diversity of citizenship" (Doc. 10 at 3), and the undersigned finds no reason at present to question Ford's allegations of citizenship *sua sponte*. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168

When, as here, "the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). " '[R]emoval ... is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) (quoting 28 U.S.C. § 1446(c)(2)(B)).

Ford argues that the requisite amount in controversy is apparent from the face of Krikorian's complaint.[4]

---

F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

[4] Ford also argues that the Court should take into consideration Krikorian's refusal to stipulate that he is not seeking, and will not accept, damages exceeding $75,000. While a plaintiff's refusal to stipulate to amount in controversy appears to have some evidentiary value on the issue, the Eleventh Circuit has held that "[t]here are several reasons why a plaintiff would not so stipulate, and a refusal to stipulate standing alone does not satisfy [the removing defendant]'s burden of proof on the jurisdictional issue." *Williams*, 269 F.3d at 1320. *See also Dunlap v. Cockrell*, 336 F. Supp. 3d 1364, 1366-67 (S.D. Ala. 2018) (Steele, J.) ("Dunlap's denials of these requests for admission is the functional equivalent of a refusal to stipulate to an amount in controversy below $75,000; therefore, the Eleventh Circuit's holding in *Williams v. Best Buy* is directly at odds with Cockrell's assertion of federal jurisdiction predicated solely on such denials. []Unsurprisingly, myriad district court decisions from this Circuit have determined that a plaintiff's mere denial of requests for admission as to amount in controversy is insufficient evidence to

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. [*Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744,] 771[ (11th Cir. 2010)]. Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").
>
> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.,* 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)); *see also Williams,* 269 F.3d at 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010).[5]

---

support removal jurisdiction on a diversity theory." (citing cases)).

[5]   Krikorian claims that *Pretka*'s reasoning conflicts with a prior Eleventh Circuit panel decision, *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), which Krikorian asserts stands for the proposition that Ford must present evidence in support of amount in controversy and cannot simply cite to the allegations in the complaint.  (*See* Doc. 10 at 3 – 4).  The *Pretka* panel itself, however, rejected the notion of any such conflict, noting: "*Lowery* did not say, much less purport to hold, that the use of deduction, inference, or other extrapolation of the amount in controversy is impermissible, as some district courts have thought.

"[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754. "What counts is the amount in controversy at the time of removal. It is less a prediction of how much the plaintiffs are ultimately likely to recover, than it is an estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (citation and quotation omitted). However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly[,]" and "all doubts about jurisdiction should be resolved in favor of

---

That was not the question in *Lowery*. Instead, the question was how to apply the preponderance of the evidence standard in the 'fact-free context' of that particular case[,]" 608 F.3d at 753 – the "fact-free context" of *Lowery* consisting of only the plaintiffs' pleadings that "offered no specific facts on the amount in controversy[,]" "a conclusory allegation that [the] amount-in-controversy requirement had been satisfied[,]" and information about verdicts in other mass tort cases. *See id.* at 752-53. *Pretka* held that a "different question is presented, however, when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star gazing." 608 F.3d at 754.
    *Pretka* further noted: "*Lowery* was a case that involved the removal procedures in the second paragraph of 28 U.S.C. § 1446(b), and the decision must be read in that context. While some of the language of the opinion sweeps more broadly, it is dicta insofar as a § 1446(b) first paragraph case, like this one, is concerned. While we may consider dicta for its persuasive value, we are not persuaded to follow *Lowery*'s dicta about the type of evidence a defendant that removes a case under the first paragraph of § 1446(b) may use in establishing the requisite amount in controversy." 608 F.3d at 747. Because Ford removed this case under the first paragraph of § 1446(b), *see Roe*, 613 F.3d at 1060 n.2 ("Because Michelin relies on Roe's initial complaint as the basis for its removal, this case is governed by the first paragraph of § 1446(b)."), *Pretka*'s reasoning controls to the extent it is inconsistent with *Lowery*. *See id.* at 1061 n.3.

remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).[6]

Counts One through Four each demand punitive damages, in addition to compensatory, consequential, and/or actual damages. As Ford correctly notes, "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (per curiam) (citations and footnote omitted). Ford first argues that an open-ended punitive damages demand, by itself, is *prima facie* evidence of § 1332(a)'s requisite amount in controversy, absent an express stipulation to a lesser amount of damages by the plaintiff. In making this argument, Ford asks the Court to adopt the reasoning of *Smith v. State Farm Fire & Casualty Co.*, 868 F. Supp. 2d 1333 (N.D. Ala. 2012) (Acker, J.), in which the district judge, in denying a motion to remand challenging § 1332(a)'s amount in controversy, stated: "The court is willing to go so far as to inform plaintiffs … who want to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99,

---

[6] Under *Dart Cherokee*, courts can "no longer rely on any presumption in favor of remand in deciding … jurisdictional questions" under the Class Action Fairness Act, which is not at issue in this case. *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014). Other than that, the Eleventh Circuit has recognized that *Dart Cherokee*, "which did not involve a plaintiff's contest to the defendant's jurisdictional allegations—did not disrupt any of th[e foregoing] pre-existing [removal] case law." *Id.* at 913.

and categorically state that plaintiff will never accept more. Otherwise, a plaintiff will find herself in a federal court…"   868 F. Supp. 2d at 1335.[7]

" 'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.' "   *Camreta v. Greene*, 563 U.S. 692, 709, 131 S. Ct. 2020, 2033 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).[8]   As Krikorian correctly notes, other Alabama federal judges have found the *Smith* line of cases unpersuasive, including at least three judges of this district.   See *Earl v. Diebold, Inc.*, Civil Action No. 14-0498-KD-C, 2015 WL 789763, at *5 n.10 (S.D. Ala. Feb. 25, 2015) (DuBose, J., adopting the recommendation of Cassady, M.J.) (finding *Smith*'s holding "unpersuasive" because it "fails to put the burden of proof on the removing party, ignores established precedent, and undermines the foundational principle that a federal court should construe its removal jurisdiction narrowly" (quotation omitted)); *Dunlap*, 336 F. Supp. 3d at 1368 (Steele, J.) ("*Smith* constitutes a distinctly minority view in this

---

[7] Other district court opinions Ford cites in support of this proposition were issued by the author of the *Smith* decision, and cited to that case in support of similar holdings.   See *Jones v. Hartford Fire Ins. Co.*, Civil Action No. 12-AR-2879-S, 2013 WL 550419 (N.D. Ala. Feb. 7, 2013) (Acker, J.); *Tucker v. Northbrook Indem. Co.*, No. 2:13-CV-01857-WMA, 2013 WL 5961095 (N.D. Ala. Nov. 7, 2013) (Acker, J.).

[8] *Accord United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district."); *Washington v. Rivera*, 939 F.3d 1239 n.8 (11th Cir. 2019) ("[D]istrict court opinions are not binding precedent."); *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) (per curiam) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions."); *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (per curiam) ("A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court…").

Circuit. Indeed, another judge in the Northern District of Alabama summarily sidestepped *Smith* as 'not binding or persuasive authority.' *Bennett v. Williams*, 2017 WL 3781187, *2 (N.D. Ala. Aug. 31, 2017). This Court declines to follow the *Smith* line of cases. It is well-settled that a removing defendant bears the burden of proving jurisdiction (including amount in controversy) by a preponderance of the evidence when the court questions the defendant's allegation about amount in controversy."); *Brown v. Ford Motor Co.*, No. 2:19CV159-SRW, 2019 WL 4072404, at *4 (M.D. Ala. Aug. 28, 2019) (Walker, M.J.) ("As to the proposition that a plaintiff's failure to specify the amount in controversy permits the inference that the jurisdictional threshold has been exceeded, the cases Ford cites in support are not precedential and do not bind this court, and the proposition itself flies directly in the face of the holdings of [the Supreme Court and the Eleventh Circuit] regarding the burden faced by a removing defendant opposing a motion for remand."). *But see Seckel v. Travelers Home & Marine Ins. Co.*, No. 4:12-CV-4163-KOB, 2013 WL 360421, at *2 (N.D. Ala. Jan. 29, 2013) (Bowdre, J.) ("Although Mr. Seckel only specifically claimed $26,430 in actual damages in his state court complaint, the unspecified damages he seeks for his alleged emotional distress and unjust enrichment claims allow the Defendant to meet the amount in controversy requirement. Without an affidavit from Mr. Seckel stating that he will not claim any more than $74,999.99 from Travelers in damages, this court has jurisdiction over the case and DENIES Mr. Seckel's motion to remand." (citing *Smith*)).

The undersigned is also unpersuaded by *Smith* and its progeny, as the Eleventh Circuit has repeatedly found that the mere presence of a demand for punitive damages, without further elaboration, does not sufficiently prove §

1332(a)'s minimum amount in controversy.  *See Williams*, 269 F.3d at 1318 (holding it was "not facially apparent" from complaint seeking "general damages, special damages, and punitive damages in unspecified amounts" for injuries sustained in a trip-and-fall "that the amount in controversy exceeds $75,000"); *Rae v. Perry*, 392 F. App'x 753, 756 (11th Cir. 2010) (per curiam) (unpublished) ("Viewed objectively, the complaint and supporting documentation filed with the notice of removal indicate that Rae sought $20,000 in compensatory damages on all counts together. Perry failed to present evidence that showed by a preponderance of the evidence that the compensatory and unspecified damages in the complaint, including *punitive damages* and attorneys' fees, alone or combined, met the jurisdictional amount. Perry's calculations were based on his own speculation, and therefore, were not objectively reasonable." (emphasis added)).[9]

*Roe v. Michelin North America, Inc.*, 613 F.3d 1058, does not buttress *Smith*'s reasoning, as Ford claims.  In *Roe*, the Eleventh Circuit held that a plaintiff's claims under Alabama's Wrongful Death Act, for which only punitive damages are available, more likely than not exceeded § 1332(a)'s jurisdictional minimum. However, the *Roe* panel did not reach this conclusion based solely on the fact that punitive damages were in play.  Rather, *Roe* considered that fact in conjunction with the Wrongful Death Act's unique underlying public policy – that human life "possesses a value beyond measure" and that homicide should be "expensive" – and by applying the five factors that a jury is specifically instructed to consider in

---

[9] *See also Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247–48 (10th Cir. 2012) ("As a general matter, punitive damages may be considered in determining the requisite jurisdictional amount. But this does not mean that a defendant's mere use of the words punitive damages automatically justifies the removal of a case on the theory that punitive damages in some unspecified amount may be possible." (citation and quotations omitted)).

awarding damages under the Act – "(1) the finality of death, (2) the propriety of punishing the defendant, (3) whether the defendant could have prevented the victim's death, (4) how difficult it would have been for the defendant to have prevented the death, and (5) the public's interest in deterring others from engaging in conduct like the defendant's" – to the specific facts of that case. 613 F.3d at 1065-66.

In this case, the complaint alleges that Krikorian purchased a new 2016 Ford Focus from a Ford dealer on March 23, 2017, for approximately $27,714.60. (Doc. 1 at 15, 17). Krikorian chose to include, at an additional cost of "over $1,000," the optional PowerShift Transmission, which was designed and marketed by Ford "as a more advanced and fuel-efficient alternative to a traditional manual or automatic transmission" that "requires no regular maintenance." (*Id.* at 15-16 (quotation omitted)). Krikorian alleges, however, based on various media reports, that the PowerShift Transmission "contains several design and/or manufacturing defects that cause, among other problems, transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, []difficulty stopping the vehicle[, v]ehicles suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion." (*Id.* at 16). Additionally, these defects cause "premature wear to the Dual Clutch Transmission's clutch plates and other components, which results in premature transmission failure and requires expensive repairs, including transmission replacement." (*Id.*).

Krikorian further alleges that Ford knew about and concealed these defects from both himself "and hundreds of thousands of other customers," and that,

"instead of repairing the defects in the PowerShift Transmission, Ford either refused to acknowledge their existence, or performed ineffectual software upgrades that simply masked the defects." (*Id.* at 17). Krikorian claims that he "has had problems with his transmission like those mentioned above and his car has never functioned as it should except for brief periods[;]" that he relied on Ford's media advertising and printed material, including its representations about the PowerShift Transmission, in making the decision to purchase his Focus; and that, had he known of the aforementioned design defects, he would not have purchased the Focus, or would have paid less for it. (*Id.* at 18).

Under Alabama law, punitive damages are potentially available on Krikorian's fraud claims. *See* Ala. Code § 6-11-20(a) ("Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.").[10] However, subject to exceptions inapplicable to this case,[11] punitive damages are statutorily

---

[10] Punitive damages are not available for breach of warranty actions under Alabama law. *See Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1299 (11th Cir. 1999) ("[P]unitive damages are not recoverable under Alabama law in an action for a breach of warranty."); *Barko Hydraulics, LLC v. Shepherd*, 167 So. 3d 304, 312 (Ala. 2014) (per curiam) (noting that "the measure of damages for breach of warranty arising from the sale of goods is governed by § 7–2–714 and § 7–2–715, Ala. Code 1975[,]" which do not provide for punitive damages). As such, the Eleventh Circuit, noting that courts "should look to state law, rather than federal law, to determine whether punitive damages are available under the Magnuson–Moss Act[,]" has also held that "the law of Alabama is clear: [plaintiffs] c[an]not recover punitive damages if they prevail[] on their Magnuson–Moss Act breach of warranty claims." *Boyd*, 188 F.3d at 1298-300. No party argues otherwise.

[11] For instance, when a defendant is a "small business," defined as "a business having a net worth of two million dollars ($2,000,000) or less at the time of the

limited to "three times the compensatory damages of the party claiming punitive damages or five hundred thousand dollars ($500,000), whichever is greater." Ala. Code § 6-11-21(a).[12] Moreover, Alabama recognizes that "[g]enerally, the purpose of

---

occurrence made the basis of the suit[,]" punitive damages are limited to "fifty thousand dollars ($50,000) or 10 percent of the business' net worth, whichever is greater." Ala. Code § 6-11-21(b)-(c). The record does not support a conclusion that Ford should be considered a "small business."

[12]   The Eleventh Circuit, albeit in an unpublished decision, has held that reference to Florida's statutory caps on punitive damages were relevant to determining amount in controversy. *See McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731-32 (11th Cir. 2014) (per curiam) (unpublished) ("McDaniel sought compensatory damages for the entire amount of the checkcashing fees collected by Fifth Third, which, based on a declaration submitted by Fifth Third, amounts to $2,488,335. McDaniel also sought the maximum amount of compensatory damages available under the FCCPA—$501,000. He also requested punitive damages under the FCCPA, which, in Florida, would be limited to $1,503,000—three times the compensatory award. *See* Fla. Stat. § 768.73(1)(a). Finally, McDaniel asked for punitive damages based on claims of common law fraud and fraud in the inducement. Again, Florida limits such an award to three times the amount of compensatory damages—$7,465,005. *See id.* These claims establish that CAFA's amount in controversy requirement has been met."). Alabama federal district courts have similarly referenced Ala. Code § 6-11-21 in finding that punitive damages would more likely than not meet or exceed § 1332(a)'s requisite minimum amount in controversy. *See Pullum v. Ford Motor Co.*, No. 2:19-CV-120-ECM, 2019 WL 2578948, at *3 (M.D. Ala. June 21, 2019) (Marks, C.J.) ("At this point, it appears to the Court that the only applicable restriction on punitive damages comes from ALA. CODE § 6-11-21 (a), which states that 'no award of punitive damages shall exceed three times the compensatory damages of the party claiming punitive damages or five hundred thousand dollars ($500,000), whichever is greater.' Accordingly, Pullum's claims for punitive damages against Ford combined with her failure to disclaim damages over $75,000 establishes the amount-in-controversy requirement."); *Larousse v. Hammond*, No. CV 1:18-00080-CG-N, 2018 WL 1956121, at *5 (S.D. Ala. Apr. 10, 2018) (Nelson, M.J.), *report and recommendation adopted*, No. CV 18-0080-CG-N, 2018 WL 1952526 (S.D. Ala. Apr. 25, 2018) (Granade, J.) ("[U]nder Alabama law, 'in all civil actions where an entitlement to punitive damages shall have been established under applicable laws,' in general 'no award of punitive damages shall exceed three times the compensatory damages of the party claiming punitive damages or five hundred thousand dollars ($500,000), whichever is greater.' Ala. Code § 6-11-21(a). Here, the Removing Defendants have presented evidence demonstrating that Joel could seek at least $20,760.09 in compensatory

punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future. Therefore, punitive damages must not exceed an amount that will accomplish society's goals of punishment and deterrence." *Ala. River Grp., Inc. v. Conecuh Timber, Inc.*, 261 So. 3d 226, 271 (Ala. 2017) (citation and quotations omitted).

---

damages. Three times that amount is $62,280.27, thus resulting in a combined compensatory and punitive damages award of $83,040.36. Indeed, in this scenario, under § 6-11-21(a) Joel could conceivably seek up to $500,000 in punitive damages, well over the jurisdictional threshold for § 1332(a)."); *Griffin v. Metro. Life Ins. Co.*, No. 2:06-CV-0135-RDP, 2006 WL 8437235, at *1 (N.D. Ala. Mar. 20, 2006) (Proctor, J.) ("Plaintiff seeks compensatory, mental anguish, and punitive damages for her claims of breach of contract, bad faith, and misrepresentation. The face amount of the policy is $40,000.00. Therefore, pursuant to Ala. Code § 6-11-21, the range of punitive damages alone (and exclusive of any other damages type) that are available to Plaintiff is between $120,000.00 and $500,000.00; both of these figures are well over the $75,000.00 jurisdictional requirement." (record citations omitted)). *But see Simpson v. Primerica Life Ins. Co.*, No. 2:16-CV-701-MHT-GMB, 2017 WL 2857699, at *7-8 (M.D. Ala. May 22, 2017) (Borden, M.J.), *report and recommendation adopted*, No. 2:16CV701-MHT, 2017 WL 2838078 (M.D. Ala. June 30, 2017) (Thompson, J.) (holding that mere reference to Ala. Code § 6-11-21 did not show that punitive damages met or exceeded amount in controversy); *Brown v. Ford Motor Co.*, No. 2:19CV159-SRW, 2019 WL 4072404, at *4 (M.D. Ala. Aug. 28, 2019) (Walker, M.J.) ("As to Ford's invitation for the court to infer on the basis of judicial experience and common sense that Brown's prayer for punitive damages is facially sufficient to bring the amount in controversy above the jurisdictional minimum, the court also must decline. Assuming actual damages in controversy of approximately $14,500, even a punitive damages award in the amount of four times Brown's actual damages would not bring the total amount in controversy above the threshold amount. Moreover, nothing in the undersigned's judicial experience or in the operations of common sense supports the likelihood that, on the facts alleged, a jury is likely to award Brown punitive damages in an amount greater than four times his actual damages.").

While Ford does not expressly discuss Ala. Code § 6-11-21 in either its notice of removal or its response to the motion to remand, Ford's notice of removal does cite the aforementioned *Pullum* opinion as involving the "same circumstances" as this case (Doc. 1 at 9), and includes a copy of the *Pullum* opinion as an exhibit (*id.* at 82 – 87).

In Alabama, the " 'general rule is that compensatory damages are intended only to reimburse one for the loss suffered by reasons of an injury to a person or property.' " *Deng v. Scroggins*, 169 So. 3d 1015, 1026 (Ala. 2014) (quoting *Sessions Co. v. Turner*, 493 So. 2d 1387, 1390 (Ala. 1986)).   "In a fraud action, '[t]he purpose of damages ... is to place the defrauded person in the position he would occupy if the representations had been true." *Id.* (quoting *Wilhoite v. Franklin*, 570 So. 2d 1236, 1237 (Ala. Civ. App. 1990)).   *See also Liberty Nat. Life Ins. Co. v. Sanders*, 792 So. 2d 1069, 1075 (Ala. 2000) ("There is a well-settled rule pertaining to the measure of damages resulting from fraudulent conduct or representations, to the effect that such damages will be fixed by an amount which would place the defrauded person in the position he would occupy if the representations had been true." (quotation and emphasis omitted)).

When, as here, "a purchaser alleges misrepresentation and does not offer to return the item purchased and rescind the sale, his measure of damages is the difference between the value of the item as represented and its actual value.   This measure essentially gives the person fraudulently induced into the purchase the benefit of the bargain … [T]he test is usually to be applied to the values at the time of the sale…" *Johnny Spradlin Auto Parts, Inc. v. Cochran*, 568 So. 2d 738, 744 (Ala. 1990) (citations and quotations omitted).   Here, Krikorian's difficulties with the subject vehicle allegedly arose primarily from being fraudulently induced to include the defective PowerShift Transmission option, at a cost of "over $1,000 to the purchase price…"   (Doc. 1 at 15).   Thus, without the PowerShift Transmission, "the difference between the value of the item as represented" – that is, a new 2016 Ford Focus with a properly working transmission – "and its actual value…at the

time of the sale" appears to be approximately $1,000.[13]  This amount, however, could also be increased by Krikorian's unspecified "out of pocket costs for the PowerShift Transmission" (Doc. 1 at 17), and has suffered "aggravation and mental anguish,"[14] since" '[a]ll naturally resulting damages, including expenses incurred as a result of the fraud, are recoverable[.]' "  *Deng*, 169 So. 3d at 1026 (quoting *Wilhoite*, 570 So. 2d at 1237) (alterations added).  See also *Griggs v. Finley*, 565 So. 2d 154, 161 (Ala. 1990) ("We hold that the general measure of damages for fraud includes all damages within the contemplation of the parties or which are the necessary or natural and proximate consequences of the wrong.").[15]  The Alabama Supreme Court, on multiple occasions, has " 'held that a single-digit multiplier of punitive damages to compensatory damages is constitutionally permitted in most instances.' "  *CNH Am., LLC v. Ligon Capital, LLC*, 160 So. 3d 1195, 1214 n.5 (Ala.

---

[13] In his motion to remand, Krikorian claims that the defective transmission has caused his vehicle to depreciate in value faster than it normally would, and that his compensatory damages should be the difference between what the vehicle is currently worth and what it would be worth without the defective transmission.  Krikorian has cited no authority indicating why this is an appropriate measure of damages, which seems to contrary to the holding in *Johnny Spradlin Auto Parts*.

[14] "Mental anguish includes anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, and inconvenience … It is well settled that a plaintiff may recover compensatory damages for mental anguish, even when mental anguish is the only injury visited upon the plaintiff."  *Slack v. Stream*, 988 So. 2d 516, 531 (Ala. 2008) (quotations omitted).  See also *Spooner v. State Farm Mut. Auto. Ins. Co.*, 709 So. 2d 1157, 1161 (Ala. 1997) ("Emotional distress is compensable in a fraud action.").

[15] The measure of compensatory damages for Krikorian's breach of warranty claims appears similar to those available for his fraud claims.  See *Winchester v. McCulloch Bros. Garage*, 388 So. 2d 927, 928 (Ala. 1980) (citing Ala. Code § 7-2-714) ("[D]amages are normally the difference between the value of the goods as warranted and the value as delivered, plus incidental and consequential damages.").

2013) (quoting *Flint Const. Co. v. Hall*, 904 So. 2d 236, 254 (Ala. 2004) (citing *Orkin Exterminating Co. v. Jeter*, 832 So.2d 25 (Ala. 2001))). Thus, compensatory damages of just over $7,500, if coupled with a punitive damages single-digit multiplier of 9, would satisfy § 1332(a)'s amount in controversy.[16]

Moreover, Krikorian is not claiming punitive damages based on an isolated incident, nor is the claimed harm purely economic in nature. Rather, Krikorian alleges that Ford knowingly concealed its defective transmissions, "along with the attendant dangerous safety and drivability problems, from [himself] and <u>hundreds of thousands</u> of other customers"  (Doc. 1 at 17 (emphasis Krikorian's)), thereby putting many people at risk of injury and even death. *Compare Roe*, 613 F.3d at 1066 ("Roe alleges Michelin made and sold tires to the public knowing that they were likely to fail under foreseeable driving conditions. Thus, Roe suggests both that Michelin might have prevented Mejia's death if it were exercising ordinary care and concern for others, and that it did not even attempt to take such measures. Finally, Roe's allegations imply that the general public has a substantial interest in deterring this conduct. Roe alleges Michelin sold the defective tires nationwide, thereby endangering the lives of thousands of people."), *with BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996) ("In this case, none of the aggravating factors

---

[16]   Krikorian also has demanded attorneys' fees as part of his damages in all counts of the complaint.  Attorneys' fees can be considered as part of § 1332(a)'s amount in controversy when "they are allowed for by statute or contract." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 n.4 (11th Cir. 2003).  An Alabama statute allows for "an additional award for reasonable attorney's fees" on Krikorian's breach of warranty claims.  *See* Ala. Code § 8-20-8.

While the Magnuson-Moss Warranty Act provides for an award of attorneys' fees to prevailing plaintiffs, *see* 15 U.S.C. § 2310(d)(2), such fees are deemed "costs" that cannot be counted toward the Act's $50,000 amount in controversy.  *See Ansari*, 145 F.3d at 1271.  Thus, it is possible they are also considered "costs" excluded from § 1332(a)'s amount in controversy.

associated with particularly reprehensible conduct is present. The harm BMW inflicted on Dr. Gore was purely economic in nature. The presale refinishing of the car had no effect on its performance or safety features, or even its appearance for at least nine months after his purchase. BMW's conduct evinced no indifference to or reckless disregard for the health and safety of others."). Krikorian has also pointed out that, as early as 2012, Ford had acknowledged "rushing [other] cars to production, taking shortcuts to save money and apparently compromising quality protocols." (Doc. 1 at 16 – 17). "[E]vidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law[,] as the law recognizes that "a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance." *BMW*, 517 U.S. at 576–77. Finally, as observed by the district judge whose decision the Eleventh Circuit affirmed in *Roe*, for a large company such as Ford, "any award that is soundly and honestly calculated to punish and deter its … behavior, which placed human lives at risk, would have to be substantial." 637 F. Supp. 2d 995, 998 (M.D. Ala. 2009) (Thompson, J.). Even if Krikorian's compensatory damages are relatively small, Ala. Code § 6-11-21(a) permits an award of up to $500,000 in punitive damages if three times the compensatory damages amount is less. Considering the foregoing, the undersigned finds that Ford has shown, by a preponderance of the evidence, that it is more likely than not that an amount in excess of $75,000, exclusive of interest and costs, "will be put at issue during th[is] litigation…" *S. Fla. Wellness*, 745 F.3d at 1315.

Accordingly, the undersigned finds that this Court has subject matter jurisdiction over this case.

### III.   *Conclusion*

In accordance with the foregoing analysis, the undersigned, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), **RECOMMENDS** that Krikorian's motion to remand (Doc. 10) be **DENIED**.

**DONE** this the 6th day of November 2019.

                                           */s/ Katherine P. Nelson*
                                           **KATHERINE P. NELSON**
                                           **UNITED STATES MAGISTRATE JUDGE**

Case 1:19-cv-00582-KD-N   Document 16   Filed 11/06/19   Page 19 of 20   PageID #: 181

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."   11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.